Judge Goodwin to my right and Judge Hugg to my left, and I welcome you all to the Ninth Circuit this morning. We have five cases to be argued, so watch your time clock. If you want to reserve any time, if you are the appellant, you're welcome to do so. You don't need permission from the bench, but keep an eye on the clock because when it comes up double zeros, you're done. With that, by way of an introduction, United States v. Cedeno Carmargo is submitted on the briefs. We'll hear argument in Reed v. Stewart. Good morning, Your Honor. May it please the Court. Counsel, my name is Javier Chon Lopez. I'm counsel for Mr. Reed, and I would like to reserve like a minute for rebuttal, if I may. Certainly may. Your Honor, Mr. Reed was tried in state court in Arizona, and he sat shackled and chained to his chair for approximately two hours as lawyers delivered their closing arguments. That is the issue before this Court, and Mr. Reed, who was present, aversed in his petition in the district court that this is what happened and that the jury had a plain view of it. The district court accepted the allegations Mr. Reed made that the jury could see, because their decision was not based on whether or not the jury could see the shackles, but rather that even if they saw the shackles, that that viewing did not have an injurious effect on the verdict. Didn't the district court also find that there was a reason that justified the shackling, which was his assault on the sheriff's deputy and attempted escape that had occurred shortly before closing arguments, commands counsel? I don't know that they made a specific finding, Your Honor, that that was the reason. I don't know that they ---- Do you agree that shackling is permissible if the state can show that there is a compelling reason for it in a criminal case? I agree that shackling is appropriate in some cases, but in this particular case, Your Honor, what happened was highly irregular at the state court in the sense that ---- Was it the attempted escape or the shackling? Well, it's how the decision was made by the trial court that I think is highly irregular, and that is the trial judge comes on the bench and just by edict says this is what happened. He attacked the deputy sheriff. I think the escape wasn't even mentioned by the trial judge, but rather by Mr. Reed in his trying to dispute what happened. But he doesn't hold an evidentiary hearing, Your Honor. He does apparently an ex parte investigation of some kind to reach that determination. I think it's a big problem with that. Well, was there an objection by counsel for Mr. Reed asking for a delay in the closing argument so that a hearing could be conducted? His objection ---- there is no objection where he ---- like there should have been where he says, Your Honor, I object to this. I want an evidentiary hearing to determine what happened with the deputy sheriff, and then is there any alternative to that. A good lawyer, I submit, would have done that. But the bullying that took place from the trial judge's standpoint, it's difficult, and if you put yourself in the position of the trial lawyer, he's walking in to do his closing summation, and the judge says, here's what happened, and this is what we're going to do, and this is how we're going to proceed. That's highly irregular, I think, and I think he was taken aback. Is there any real doubt about what happened? I believe that the record shows, and from Mr. Reed's standpoint, he says that there was an accident, some type of ---- we don't really know what happened, Your Honor. I mean, we have the characterization by the trial judge as that he attacked the deputy sheriff. But was it a physical confrontation? Did he throw something at it? What happened? We have no evidence of what happened. And what I'm getting at, was it necessary, was the only alternative to shackle the person? And it did not happen in the courtroom. I think that's important, because the focus of all the appropriateness of shackling is really more of, was he disruptive in the courtroom? Did he do anything that would show he's not going to behave as he listens just to closing arguments? There's nothing in the record that shows. Counsel, you're not suggesting that if he assaults a deputy sheriff that the assault has to occur in the courtroom, are you? No, sir, I'm not. But there is ---- There's no question that the assault occurred while he was in custody, shortly before he was brought into the courtroom. At least that's how I read the record. I don't like the characterization of assault, because ---- Well, the incident. It did happen in the cell, but we don't know how serious or how small it was. There's also no record that he was ever charged with anything, so that would lead me to believe that it wasn't the most serious event in the world, or it's possible to read the record that way. But I think this Court should be worried that the record is missing because of what the trial judge decided to do, and then at the same time what the lawyer failed to do, and that is to request a hearing. It wouldn't have taken much, and that's one of the issues before the Court, to say, Your Honor, I object, I understand that's how you view it, but we need to get to the bottom of this and have a hearing and see what happened. How do you explain the failure of the Petitioner to take this shackling matter up with the State court on appeal? Two ways, Your Honor. One is his appellate lawyer filed an Anders brief on his behalf. That to me is... You mentioned that in your part of the inadequate defense argument. Correct, Your Honor. And so he suffered from that as well in the trial court. The appellate lawyer does an Anders brief and nothing more, and doesn't even mention the shackling as a possible issue. And in Arizona, the proper way to have attacked ineffective assistance of counsel of appellate counsel would have been to a Rule 32, which he never got to file. And that's also in dispute here. But that should have gone on direct appeal, and if it didn't go, then he could have brought it under Rule 32, claiming ineffective assistance of counsel, appellate counsel, that is, for not bringing it to the Court's attention. Does that apply to the appellate counsel or the trial counsel? I believe it's a separate lawyer, Your Honor, yes. And so trial counsel at the same time didn't preserve the record for that to be made, and then appellate counsel just didn't see the issue at all. And so Mr. Reed is there and never having to present this issue to the State's courts. One of the gaps in the record is also that we have no way of knowing whether any juror ever saw the shackles. Well, what you have, Your Honor, I would submit is Mr. Reed's account of what happened. He was obviously a participant. He was there. In his petition, I would ask the Court to accept as an affidavit as you can. And in it, he says, I was in plain view of the jury, chained, handcuffed and shackled to the chair. Well, if he's procedurally defaulted, we can't examine the shackling issue at all, can we? I agree with that, that if procedural default was used and you couldn't do it, I would urge you to follow the district court's logic and reasoning and analysis. Well, the district court just went ahead and decided it on the merits, right? But I would say that doesn't give us jurisdiction to do the same thing, does it? If it's procedurally defaulted, that's jurisdictional. Well, the district court didn't make a finding that it said we could do that potentially, but that wasn't the finding that they made. And I think that the finding they did make from cause and prejudice is that's really what's going on. Don't we have to review de novo the question of whether or not there was procedural default because it goes to the very power of the court of appeals to afford relief? My answer to that is it's kind of confusing. I know I was exactly right, but it seems that the State had a duty once they got a decision only on the merits to take some kind of an appeal on the procedural default question to bring it before the court. In other words, they didn't appeal that portion of the decision. And my position is that they ought to have before you have jurisdiction to consider de novo here. So is your argument that the State waived it by not raising it? Correct. Correct. They could have, and they did not. Did you want to save some time for review? Yes, I will save a minute. Thank you, Your Honor. Very well. Thank you, counsel. We'll hear from the State. May it please the Court. Assistant Attorney General Vincent Rubago appearing for the appealee in this case. This case is indeed one of procedural default. I think the two issues that the Petitioner raises to try to overcome that hurdle is that his attorney raised an Anders brief and therefore didn't raise the issue, and the second is that he was somehow not notified by the appellate courts in Arizona with the mandate, and therefore his days, his 30 days to file a notice ran, and therefore he was precluded from filing Rule 32. Both of those claims are both legally and factually unsound. First, with respect to the Anders issue, what is important to note is that in this case the Petitioner, dissatisfied with his appellate counsel's representation, was thereafter allowed to file a supplemental appellate brief on his own behalf. He sought to have the State court allow him to file essentially a brief without page limitation, and the appellate court said no. The State appellate court said no. Our rule is 40 pages. You will have to keep within that rule. But they didn't. They allowed him to do it in a handwritten brief, which he did. Now, the important part about that is that he then raised various issues on appeal. He could have raised himself the substantive underlying shackling issue on appeal if, indeed, he felt it was an abuse of the trial court's discretion in the manner of how the shackles were put on or anything else with respect to that. And, in effect, he fired his lawyer, didn't he? And then he was released. Effectively, he sought to strike, have the brief stricken of his appellate counsel. Now, the other interesting part about this is that so he didn't raise it. And in his petition, in his petition himself, he admits, I think it's page, I have it here somewhere, he admits, I don't have the exact page here, it's in his petition at page, I believe, 16, I'm sorry, excerpts of record 16, that he called, in other words, he removed the shackling issue from his appellate brief due to the page limitation. So this was an issue that he himself knew about. He didn't include it in his own brief because he felt he didn't have enough pages. He couldn't fit all of his various numerous arguments within the brief pages. So he knew about it, did not raise it. Thereafter, and with respect to the Anders issue, his own counsel advised him that under State law he could file a Rule 32 petition for post-conviction relief within 90 days of the judgment and that he should do so immediately and stay the pending appeal so that he could argue ineffective assistance of counsel on another issue. In other words, failure to prepare for trial or something of that nature. Why wouldn't his appellate attorney at least have raised the shackling problem? Yeah, I think... Anders' brief puts an obligation on an attorney to do it. That seems like a reasonable matter to bring up and call a court's attention to. In many cases, it might be, Your Honor. In this case, it was not for several reasons. First and foremost, the incident did occur, as the trial court stated, after this was reported to him by the bailiff, apparently, or the sheriff, whom was attacked and injured, although not seriously. Now, what's interesting to note is the trial court's specific... How do we know what that incident was? What really occurred? Well, all we know is what the trial court stated, as well as what the prosecution stated. Now, the trial court, it wasn't within the view of the trial court. No, not to my knowledge. The record is merely what the trial court stated. So I don't know if the trial court witnessed anything of that nature or it was simply reported. I assume that it was reported to him. But the factual contours of what happened are supported or laid out, I should say, by what the trial court stated. And... But what the trial court said. But what I want to know is what the basis of the trial court saying it was. Well, in terms of that problem is the result of no objection being raised. And to the point of answering your question as to why that would not have been an appropriate issue to raise on appeal, it's further supported if one looks to the record, because that was not the only opportunity and the only time this matter was discussed. Pages 302 and 304 of the sentencing or excerpts of record which include the sentencing transcript, the issue was specifically talked about by trial counsel for Petitioner. And he mentioned to the court, I understand that this Court may take notice of some other matters that have occurred during trial, and I ask this Court, please do not hold those against my client for purposes of sentencing, because he will he may have to pay the price on whatever else may be charged in this case, but don't make him pay the price now with respect to this sentencing. So it was an issue that trial counsel was well aware of, and thereafter the prosecution argued specifically without objection that this had been a foiled escape attempt, the deputy was injured, not seriously, and there was no objection by either Petitioner or counsel who were both given the opportunity to speak at the sentencing and also the opportunity to say if there was any legal cause why sentencing should not proceed. At what stage, it's not clear to me from the record, at what stage the attorney came in. Originally he was representing himself. Yes. And then the attorney was appointed. At what point?  Well, he was appointed on the 23rd of August, 1994. Then upon his affirmation that he was in no way ready to go to trial on this domestic violence and kidnapping of the wife, he asked for additional time, and he was given additional time. I think it was until the 22nd the Court gave several weeks for him to prepare for trial. And so that is when the trial occurred. So throughout the trial itself, this attorney that was representing him at trial was there and represented the whole time. Yes. And he did not object at the time or at sentencing when the matter was discussed, and he brought it up himself. And under those circumstances, where apparently I would also note that he was advised specifically by his appellate attorney to file an ineffective assistance claim but on a different issue, and Mr. Petitioner expressly refused, and that's in the excerpts of record as well. I believe it is 335 to 339, pages 341 and 359. The Petitioner refused to file an ineffective assistance claim with respect to the other issue. So this is not a situation where his appellate counsel is truly falling down. He filed an Anders brief, suggested one ineffective assistance claim to raise, and said you should do it immediately, which he had the right to do so under Arizona law within 90 days of the judgment. The other aspect about the mandate, that's if you wait until after the appeal, then the mandate issues you have 30 days, but that didn't preclude him before that point within 90 days of immediately filing for postconviction relief. Now, be that as it may, even assuming this Court were to go beyond and say that this was an issue that should have been looked at, I would like to state and rely upon one of the cases cited in the reply brief but for a different proposition, and that is Estelle v. Williams. Estelle v. Williams was, had to do with the compelled wearing of prison garb at trial. Now, the most interesting part about that case is that a prisoner cannot be compelled to wear prison garb. That's just, there's no sound reason for it. So that's illegal on its face. In that case, the Petitioner did not object at trial. He wore the prison clothes and later tried to raise the issue. And the United States Supreme Court said in that case that any complaint as to the illegality, the unconstitutionality of this alleged compulsion was essentially negated by the silence at trial on this issue. And that was pages 425 U.S., 501 at pages, pinpoint page 512. And that's ironically something that's very parallel to what happened here, but in the context of Shackling. So to the extent that there would be any complaint about any illegality, the deafening silence at multiple occasions throughout the trial and then later on appeal when he, when the Petitioner specifically removed that issue from his personal, personally prepared brief, we would argue that that negates any complaint as to the illegality. Two questions. One, is there any indication anywhere in the record that as to what the jury could see, see the shackles, the handcuffs or the life shackles? There is no evidence whatsoever as to exactly the manner in which he was shackled or what was visible or what was not, primarily, as we've argued, due to the failure to object. The defense Petitioner has argued that the lack of a record was due to the fault of the trial court. But the way these proceedings happen is that with any trial court, an issue is raised and the parties then have the obligation on either side to object. And if a hearing is requested, you flesh it out. In this case, there was no objection then, nor was there any attempt many times after. Why wouldn't it be ineffective assistance of trial counsel to not raise that? It seems to me if the jury could see the shackles and this all of a sudden occurs, jury is, I think, going to be wondering if they could see it, what on earth is wrong with this guy? And why wouldn't the trial counsel raise that? I've run out of time. May I finish the Court's question? Yes. What is the most salient point, I think, to note about this and why trial counsel my view as to why he didn't object, of course, is he had an opportunity to speak with his client. And if trial counsel felt that it were justified to shackle him because it was the trial was almost over, there was another pending case against him in Federal Court for armed robbery. And the verdict might be coming in shortly. Under those circumstances, any trial court given an attack on a bailiff would be justified in shackling. The question of visibility is not so much of an issue anymore. It's not as if he was brought in in jail garb and manacles all over him in some sort of a, you know, Pirates of the Caribbean fashion. He was just shackled down in his civilian clothes for the very small portion of closing argument, defense argument and prosecution rebuttal. Under those circumstances, it doesn't seem like there would be any real decision or failure in that performance to not object at that time. Did you object your claim waiver before the Federal district court? Yes. Your Honor, that was raised in the initial answer. And so that issue was not raised. It was in our answer. And thereafter, the State was ordered to also respond on the merits as the case went through the years of proceedings in the district court. Thank you, Your Honor. Very well. Your Honor, I would ask you to follow the line of cases from this circuit like Dias and Roland and Parrish, which are all cited on the briefs. Where this Court has been very careful in giving petitioners the right to figure out what is it that happened in a case where shackling is involved. Was it visible to the jury or not? And in all of those cases, there has been some type of remand to see exactly what happened instead of guesswork. You're not procedurally defaulted. You don't or you must concede, I think, that if it's procedurally defaulted, we can't remand it for a hearing because we don't have the power to decide to grant relief on that issue. And I guess I agree with you that if you're procedurally defaulted, you're procedurally defaulted. However, in this case, the merits were considered, and I made my argument as to why you shouldn't do it because Mr. Reed never got notice of and never got to file his Rule 32 in time. And he asked for plenty of guidance from the trial court, which was really denied. What's your response to the argument that his counsel told him to get his Rule 32 petition filed because he only had 90 days if he wanted to challenge the IAC? Well, that's in a different – in a totally different context, i.e., after direct appeal. Now, he doesn't have to do it then because what Mr. Reed wanted – Not what I understand that he was told. Am I misunderstanding the rationale? Well, you haven't – there's two – you still have a Rule 32 that you can file to attack your appellate counsel, which is what he wanted to do, and your trial counsel for ineffective assistance of counsel. Those issues you can't raise on direct appeal in Arizona. And similarly, in this Court, you have to wait for postconviction. So that's what he wanted to do, is to raise those issues. The shackling could be raised as an ineffective assistance of counsel. But he doesn't have to wait for his direct appeal if it's a trial-related IAC, does  he? I don't believe he has to, but if he wants to attack his appellate lawyer, certainly he has to wait for that to be over. Right. But I think you and I are talking past one another. My understanding from the representation by your opponent was that your client was advised by his trial counsel that if he wanted to file a Rule 32 petition, that he had to do it within 90 days. So he was told that he needed to get his paperwork started. And he apparently decided he didn't want to challenge that ineffective assistance issue. Well, Your Honor, my response to that would be is that there are several ways to that you can procedurally follow. You don't have to do it as trial counsel suggested in Arizona. He had the option of doing it the way that he chose to do it, and unfortunately But you don't have to wait either, right? As I understand it, you can file a Rule 32 petition while your direct appeal is still Your Honor, I don't know the answer to that, to be honest, to know that that's true. I think that's the correct statement of the law counsel. But in any case, Your Honor, there is a lot of falling down by trial and appellate counsel here. That's why there's no record. And I urge you to remand the case for an evidentiary hearing. Thank you, Your Honor. Thank you very much. The case just argued is submitted. We will next hear argument in Martin v. Carey.
judges: Goodwin, Hug, Tallman